2009 ND 113

Joseph M. VICKNAIR; Anthony Whitaker; Theresa Zefiretto, as personal representative for the Estate of Liborio Zefiretto; Robert Ulshafer; John Sehr; Ray Brunet, individually, and as personal representative for the Estate of Eugene P. Brunet, deceased; Violet Cooper, individually, and as personal representative for the Estate of William H. Cooper, deceased; Janice Hilborn, individually, and as personal representative for the Estate of August Freeman, deceased; Mildred Pastva, individually, and as personal representative for the Estate of John G. Pastva, deceased; Cheryl Pernell, individually, and as personal representative for the Estate of Eddie Pernell, Sr., deceased; Lisa Sangerman, individually, and as personal representative for the Estate of Richard A. Christofretti, deceased; Margaret Swygert, individually, and as personal representative for the Estate of Cromwell Swygert, deceased; Ruby Todd, individually, and as personal representative for the Estate of David D. Todd, deceased; Rona Pourier, individually, and as personal representative for the Estate of Hobert Ecoffey, deceased; and Patrick Blando, individually, and as personal representative for the Estate of Wendell Blando, deceased, Plaintiffs and Appellants

v.

PHELPS DODGE INDUSTRIES, INC.; A.H. Bennett Company; A.W. Kuettel & Sons, Inc.; Border States Industries, Inc.; Columbia Boiler Co.; Crane Co; Dossert Corporation; DuctSox Corporation f/k/a Frommelt Safety Products; Superior Essex Group (individually and as successor-in-interest to Essex International, Inc.); Excelsior, Inc.; Foster Wheeler, LLC; Greene, Tweed & Company; Houston Specialty Wire & Cable Corp.; Oakfabco f/k/a Kewanee Boiler Corporation; Rockbestos–Surprenant Cable Corp. (f/k/a The

Rockbestos Company); Riley Stoker Corporation; Robertson Ceco Corporation, f/k/a H.H. Roberson Company; Sprinkman Sons Corporation; Weil McLain Company; Zurn Industries, Inc.; American Standard, Inc.; The Trane Company (a division of American Standard Inc.); United Conveyor Corporation; S.O.S. Products Company, Inc.; Foseco, Inc.; Fuel Economy Engineering Co.; J.H. France Refractories Company; Smith–Sharpe Company; Burnham LLC, f/k/a Burnham Corporation; Bryan Steam Corporation; Certain–Teed Corporation; Foster Products Corporation (as successor-in-interest to Foster Products Division of H.B. Fuller Company and to the Benjamin Foster Division of AmChem Products, Inc.); Graybar Electric; H.B. Fuller Company; Henry Vogt Machine Company; Hobart Brothers Co.; Inductotherm Industries, Inc.; The Jamar Company (individually and as successor-in-interest and liability to the Walker–Jamar Company); Kelsey–Hayes Group (a division of Varity Corporation); Linde, Inc., f/k/a BOC Group and/or Airco, Inc.; Lincoln Electric Co.; Praxair Distribution, Inc.; RCH Newco II; Rhone–Poulenc, Inc. (as successor-in-interest to Benjamin Foster, a division of AmChem Products Company); Union Carbide Corporation; Uniroyal, Inc.; and The Jamar Co., individually and as successor-in-interest to Walker Jamar Company, Defendants and Appellees

**and**

999 Quebec, Inc. (a/k/a International Boiler Works Company); ACandS, Inc. (individually and as successor-in-interest to Armstrong Contracting & Supply, Inc. and Keasby & Mattison Company); A.L. Crump and Company, Inc.; A.P.I., Inc. (a/k/a A.P.I. Company of Minnesota); A.W. Chesterton Company; Anchor Packing Company; Apollo Piping & Supply; Asbestos Corporation, Ltd.; Atlas Turner, Inc.; Australian Blue Asbestos, Pty.; Bell & Gosset; Bell Asbestos Mines, Ltd.; Building Sprinkler Company, Inc.; CBS Corporation (f/k/a Westinghouse Electric Corporation); Chromalox (a division of Emerson Electric Company); Cleaver–Brooks, Division of Aqua–Chem, Inc.; Combustion Engineering, Inc. (successor-in-interest to M.H. Detrick Company, Walsh Refractory Corporation and Refractory and Insulation Corporation); Crown Cork & Seal Company, Inc. (successor-in-interest to Mundet Cork Corporation); CSR, Ltd. (a/k/a Colonial Sugar Refining Company, Ltd.) individually and as an alter-ego of Australian Blue Asbestos, Pty.; Dakota Welding Supply; Deltak, L.L.C. (a Unit of Jason Inc.); Detroit Stoker; Draxton Sales; Dresser Industries, Inc.; Durabla Manufacturing Company; E.J. Lavino and Company, Inc.; Electric Supply Corp.; Emerson Electric Co.; Ericsson, Inc. (f/k/a Cablec Corp.) (as successor-in-interest to Anaconda Wire & Cable Company); F.R.P. Products, Ltd.; F & C Supply, Inc.; Fargo–Moorhead Insulation Company; Firebrick Supply Co.; Fisher Governor Co.; Flintkote Company (individually and as successor-in-interest to Flintkote Mines, Ltd.); Flintkote Mines, Ltd.; Garlock, Inc.; General Electric Company; George T. Walker & Co., Inc.; Georgia–Pacific Corp.; Hercules Chemical Company, Inc.; Hickory Insulation Co.; Honeywell, Inc.; Hopeman Brothers, Inc.; Illinois Insulation Contracting Company, Inc. (f/k/a

Illinois Roofing & Insulation Company); Ingersoll–Rand Company; Insulation Services, Inc.; International Vermiculite Co.; Jerguson Gage & Valve; John Crane, Inc. (successor-in-interest to John Crane–Houdaille, Inc. and Crane Packing Company); Johnston Boiler Co.; Lac d'Amiante du Quebec, Ltee. (f/k/a Lake Asbestos of Quebec); Lochinvar; M.W. Kellogg Company; MacArthur Company; Mandan Electric Supply; Marmon Corporation; McMaster Carr Supply Company; McNeil Refactories, Inc.; Mellema Company; Metropolitan Life Insurance Company; Mine Safety Appliance Company; Minnesota Mining & Manufacturing; Northern Plumbing Supply, Inc.; The Okonite Company, Inc.; Owens–Illinois, Inc.; Parker Boiler Co.; Paul A. Douden; Pfizer, Inc.; Pipe, Valve & Fittings Company; Power Process Equipment, Inc.; Quigley Co., Inc.; Quin–T Corporation; Rapid–American Corporation; Research Cottrell, Inc.; Rockwell International Corporation; Rome Cable Corp. (a subsidiary of Rome Group Inc.); Roughrider Supply; Ryall Electric Supply Co.; Samuel Moore & Co.; SEPCO Corporation; Stemmerich Supply Co.; Superior Boiler Works, Inc.; Sussman Electric Boilers; Thermo Electric Co.; U.S. Filter Co.; Union Boiler Co.; and Victor H. Leeby Company, Defendants.

No. 20080139.

Supreme Court of North Dakota.

June 29, 2009.

As Corrected July 21, 2009.

Rehearing Denied July 31, 2009.

David C. Thompson (argued), David C. Thompson, P.C., Grand Forks, N.D. and Jeanette Boechler (on brief), Boechler Law Firm, Fargo, N.D., for plaintiffs and appellants.

Larry L. Boschee (argued), Pearce & Durick, Bismarck, N.D., for defendant and appellee Phelps Dodge Industries, Inc.

Robert E. Diehl, Kyle Brown Mansfield, and Heather H. Neubauer, Foley & Mansfield, P.L.L.P., Minneapolis, MN, for defendants and appellees A.H. Bennett Company, A.W. Kuettel & Sons, Inc., Border States Industries, Inc., Columbia Boiler Co., Dossert Corporation, DuctSox Corporation f/k/a Frommelt Safety Products, Superior Essex Group (individually and as successor-in-interest to Essex International, Inc.), Excelsior, Inc., Foster Wheeler, LLC, Greene, Tweed & Company, Houston Specialty Wire & Cable Corp., Oakfabco f/k/a Kewanee Boiler Corporation, RCH Newco, LLC, Robertson Ceco Corporation, f/k/a H.H. Robertson Company, Rockbestos–Surprenant Cable Corp. (f/k/a The Rockbestos Company), Riley Stoker Corporation, Sprinkman Sons Corporation, Weil McLain Company, and Zurn Industries, Inc.

David Thomas Schach and John C. Hughes, Meagher & Geer, Minneapolis, MN, for defendants and appellees United Conveyor Corporation, and S.O.S. Products Company, Inc.

Steven A. Storslee, Storslee Law Firm, P.C., Bismarck, N.D., for defendant and appellee Crane Co.

W. Todd Haggart, Vogel Law Firm, Fargo, N.D., for defendants and appellees American Standard, Inc. and the Trane Company, a division of American Standard, Inc.

Nicholas John O'Connell, Murnane Brandt, St. Paul, MN, for defendant and appellee Foseco, Inc.

Thomas Dice Jensen, Lind Jensen Sullivan Peterson, Minneapolis, MN, for defendant and appellee Smith–Sharpe Company and J.H. France Refractories Company.

Shawnda R. Ereth, Zuger Kirmis & Smith, Bismarck, N.D., for defendant and appellee Burnham LLC.

Paul Rudell Oppegard, Oppegard, Wolf & Quinton, Moorhead, MN, for defendants and appellees Uniroyal, Inc., Linde, Inc., f/k/a BOC Group and/or Airco, Inc., Hobart Brothers Co., Lincoln Electric Co., Praxair Distribution Inc., Inductotherm Industries, Inc., Graybar Electric, and Kelsey–Hayes Group, a division of Varity Corporation.

Jane L. Dynes and Ronald H. McLean, Serkland Law Firm, Fargo, N.D., for defendants and appellees Certain–Teed Corporation, H.B. Fuller Co., Foster Products Corporation, as successor-in-interest to Foster Products Division of H.B. Fuller Company and to the Benjamin Foster Division of AmChem Products, Inc., Rhone–Poulenc, Inc., and Union Carbide Corp.

Richard John Leighton, Duluth, MN, for defendants and appellees The Jamar Co., individually and as successor-in-interest and liability to Walker Jamar Company.

Kent Benedict Gravelle, Cundy & Martin, LLC, Bloomington, MN, for defendant and appellee Henry Vogt Machine Co.

Stacey Tjon Bossart, Solberg, Stewart, Miller & Tjon, Fargo, N.D., for defendant and appellee Bryan Steam.

Michael D. Sharkey, Pustorino, Tilton, Parrington & Lindquist, PLLP, Minneapolis, MN, for defendant and appellee Fuel Economy Engineering Co.

SANDSTROM, Justice.

[¶ 1]   Joseph M. Vicknair and fourteen other plaintiffs appeal from a judgment severing them from two lawsuits and dismissing without prejudice on the ground of *forum non conveniens* their asbestos-related product liability action against Phelps Dodge Industries, Inc., and numerous other defendants. We conclude the district court erred in granting the motion to dismiss on the basis of *forum non conveniens,* because the defendants have not shown an adequate alternative forum exists in another jurisdiction to entertain the plaintiffs' claims.   We reverse and remand.

I

[¶ 2]   The fifteen plaintiffs in this case were originally part of a group of individuals who in December 2002 commenced two lawsuits in Morton County against manufacturers, sellers, and distributors of asbestos-containing products, claiming they became ill or disabled after being exposed to those products.   The defendants are residents of or do business within North Dakota.   The fifteen plaintiffs involved in this appeal are residents of states other than North Dakota and do not claim their asbestos exposure occurred in North Dakota.   The defendants moved to dismiss the plaintiffs' claims, arguing North Dakota is an inconvenient forum to conduct the litigation.   During the proceedings, counsel for the plaintiffs conceded that 13 of the 15 plaintiffs had missed the statute-of-limitations periods in all jurisdictions except North Dakota when the actions began in December 2002.   Counsel for the plaintiffs concede the statute of limitations had expired in the jurisdiction where the claims arose with regard to the remaining two plaintiffs sometime before the defendants moved to dismiss on the basis of *forum non conveniens.*

[¶ 3]   In three separate orders issued in 2005, 2006, and 2007, the district court granted summary judgment dismissal of the plaintiffs' claims without prejudice on the basis of *forum non conveniens.*   The court essentially ruled dismissal was proper because there was no connection between the plaintiffs, their claims, and the state of North Dakota, reasoning in its 2005 decision:

> At this hearing it was asserted by defense counsel and admitted and briefed by counsel for the plaintiffs that none of the plaintiffs has a case that arose out of North Dakota, that none of them live or work in North Dakota, that they have no claim for asbestos exposure arising in North Dakota, that none of the defendants (except for possibly one) has its principal place of business in North Dakota, that their cases are all barred by the applicable statute of limitations of the state in which they reside or in the state in which their causes of action arose, and that their only real connection to North Dakota is that the attorneys they have retained to repre-

sent them live and work in North Dakota.

The court's three orders were merged into a judgment in 2008, and the claims of the fifteen plaintiffs were severed from the two main actions commenced in December 2002.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Although dismissals without prejudice are generally not appealable, the judgment in this case is appealable because it has the practical effect of terminating the litigation in the plaintiffs' chosen forum. *See Triple Quest, Inc. v. Cleveland Gear Co., Inc.*, 2001 ND 101, ¶ 8, 627 N.W.2d 379. The plaintiffs' appeal was filed in a timely manner under N.D.R.App.P. 4(a). This Court has jurisdiction of the plaintiffs' appeal under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 5] The plaintiffs argue the district court erred in dismissing their action on the ground of *forum non conveniens*. They contend an alternative forum must exist before a *forum non conveniens* motion may be granted, and because the statute of limitations has expired in all jurisdictions except North Dakota, the district court erred in granting the motion.

[¶ 6] The doctrine of *forum non conveniens* is embodied in N.D.R.Civ.P. 4(b)(5), which provides: "If the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any condition that may be just." In *Commonwealth Land Title Ins. Co. v. Pugh*, 555 N.W.2d 576, 579 (N.D.1996), this Court explained:

Under that provision, a court with jurisdiction "could determine that the action be heard in another forum and dismiss the action in this State in the interest of substantial justice because of inconvenience to the parties." *Lumber Mart, Inc. v. Haas Int'l Sales & Serv., Inc.*, 269 N.W.2d 83, 88 (N.D.1978). "The doctrine of forum non conveniens establishes the right of a court to resist imposition upon its jurisdiction even though such could properly be invoked." *Holme v. Jason's Lounge*, 168 Mich.App. 132, 423 N.W.2d 585, 586 (1988). A trial court may make a forum non conveniens ruling sua sponte. *Haynes v. Carr*, 379 A.2d 1178, 1180 (D.C.App.1977). Whether or not to dismiss under the doctrine of forum non conveniens "depends greatly on the specific facts of the proceeding before the court." *W.R. Grace & Co. v. Hartford Accident & Indem. Co.*, 407 Mass. 572, 555 N.E.2d 214, 217 (1990). The decision lies in the discretion of the trial court and will be reversed only for an abuse of discretion. *Farley v. McDonnell Douglas Truck Servs., Inc.*, 432 Pa.Super. 456, 638 A.2d 1027, 1029 (1994).

A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law. *Brummund v. Brummund*, 2008 ND 224, ¶ 5, 758 N.W.2d 735.

[¶ 7] On the limited occasions this Court has addressed the *forum non conveniens* doctrine, we have not determined whether the doctrine may be applied only when there is an alternative forum available and whether an alternative forum can exist if the statute of limitations has run in the alternative forum. More than 60 years ago, however, the United States Supreme Court said, "In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in

which the defendant is amenable to process." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Congress codified the doctrine in 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Supreme Court later explained in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal citations omitted):

> At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute.

The Supreme Court has further said, "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," but "[w]hen the plaintiff's choice is not its home forum, ... the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.' " *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (internal citation omitted). The Court in *Sinochem,* at 435, 127 S.Ct. 1184 also strongly indicated an alternative forum does not exist if the statute of limitations has expired when it dismissed the lower court's

concern that, under the circumstances of that case, a court "could not condition a *forum non conveniens* dismissal on the defendant's waiver of any statute of limitations defense."

[¶ 8] The American Law Institute has declared that under the doctrine of *forum non conveniens,* "[a] state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action provided that a more appropriate forum is available to the plaintiff." *Restatement (Second) of Conflict of Laws* § 84 (1971). The American Law Institute explained the factors to be considered under the rule:

> The two most important factors look to the court's retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed unless a suitable alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction in other states. The same will be true if the plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept the defendant's stipulation that he will not raise this defense in the second state.

*Id.* at Comment c.

[¶ 9] Consequently, it is not surprising that the near unanimous view of both federal and state courts is that an adequate alternative forum is a prerequisite to granting a motion to dismiss on the basis of *forum non conveniens* and that there is no adequate alternative forum available if the statute of limitations has expired in the proposed alternative forum. *See, e.g., Bank of Credit and Commerce Int'l*

(OVERSEAS) Ltd. v. State Bank of Pakistan, 273 F.3d 241, 246 (2d Cir.2001); Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 423–24 (1st Cir.1991); Kontoulas v. A.H. Robins, Co., Inc., 745 F.2d 312, 316 (4th Cir.1984); Delfosse v. C.A.C.I., Inc.—Federal, 218 Cal.App.3d 683, 267 Cal.Rptr. 224, 227–29 (1990); Sanwa Bank, Ltd. v. Kato, 734 So.2d 557, 561 (Fla.Ct.App.1999); Jones v. Prince George's County, 378 Md. 98, 835 A.2d 632, 646 (2003); Kennecott Holdings Corp. v. Liberty Mut. Ins. Co., 578 N.W.2d 358, 361–62 (Minn.1998); Shewbrooks v. A.C. and S., Inc., 529 So.2d 557, 561–62 (Miss.1988); Varo v. Owens–Illinois, Inc., 400 N.J.Super. 508, 948 A.2d 673, 680–81 (N.J.Super.A.D.2008); Marchman v. NCNB Texas Nat. Bank, 120 N.M. 74, 898 P.2d 709, 724 (1995); Binder v. Shepard's Inc., 133 P.3d 276, 278–80 (Okla. 2006); Jessop v. ACF Indus., LLC, 859 A.2d 801, 803 (Pa.Super.2004); Kedy v. A.W. Chesterton Co., 946 A.2d 1171, 1183–84 (R.I.2008); see also M. McMahon, Annot., Forum non conveniens doctrine in state court as affected by availability of alternative forum, 57 A.L.R.4th 973, §§ 3, 4 (1987), and cases collected therein. The analysis typically applied by these courts is cogently summarized in State Bank of Pakistan, 273 F.3d at 246 (internal citations omitted):

> The first step in a forum non conveniens analysis is for the court to establish the existence of an adequate alternative forum. An alternative forum is generally adequate if: "(1) the defendants are subject to service of process there; and (2) the forum permits 'litigation of the subject matter of the dispute.'" It follows that an adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum.
>
> After concluding that an adequate alternative forum exists, the court must weigh the public and private interests

identified in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), in order to determine which forum "will be most convenient and will best serve the ends of justice." The defendant bears the burden of proof on all elements of the motion, and great weight is given to the plaintiff's choice of forum.

[¶ 10] The defendants argue we should reject the majority approach and adopt the reasoning of Islamic Republic of Iran v. Pahlavi, 62 N.Y.2d 474, 478 N.Y.S.2d 597, 467 N.E.2d 245, 249 (1984), in which the Court of Appeals of New York held that although "the availability of another suitable forum is a most important factor to be considered in ruling on a motion to dismiss," it is not "a prerequisite for applying the conveniens doctrine." The court ruled that proof of the availability of another forum should not be required in all cases before permitting dismissal, because "[t]hat would place an undue burden on New York courts forcing them to accept foreign-based actions unrelated to this State merely because a more appropriate forum is unwilling or unable to accept jurisdiction." Id. The facts in Pahlavi were extremely unusual. In November 1979, the revolutionary government of Iran sued the former Shah and his wife, seeking to recover more than $35 billion they allegedly misappropriated from the people of Iran through a constructive trust on the couple's assets throughout the world. Id. at 246–47. The plaintiff's only argument for denying the forum non conveniens motion was the absence of an alternative forum "because of the political situation in Iran under the Khomeini regime." Id. at 248. In affirming the grant of the motion, the court relied upon the burden on state courts, the nonresidence of both parties, the likely applicability of Iranian law, the inability to impose a constructive trust on

the defendants' assets if they were not located in New York, the inability of the defendants to defend themselves because the witnesses and evidence were located in Iran, and any failure to provide an alternative forum in Iran was the fault of the plaintiff. *Id.* at 248–50.

[¶ 11] The plaintiffs correctly label *Pahlavi* an "outlier case." We have not found any jurisdiction outside of New York that has adopted *Pahlavi.* The case has been limited to its own facts by lower New York courts. *See, e.g., In re OxyContin II,* 23 Misc.3d 974, 881 N.Y.S.2d 812, 820, 2009 WL 367759 *7 (N.Y.Sup.Ct.2009) ("The facts in *Islamic Republic of Iran v. Pahlavi* are hardly analogous to residents of the various states of the United States, its commonwealths and territories suing an American pharmaceutical company in its home state for alleged torts and breaches of warranties committed within the United States. The facts in *Islamic Republic of Iran* are so dramatically different from the case at bar, that the conclusion that the plaintiff's case should be similarly dismissed, is not controlling.") The case has also been limited to its facts by courts in other jurisdictions. *See, e.g., Kato,* 734 So.2d at 562 n. 5 (*Pahlavi* is "[t]he sole exception found to this requirement [of an adequate alternative forum and] concerns the situation in which the plaintiff itself is a foreign government that has failed to provide itself with an adequate alternative forum through its own judiciary."). We agree with the court's observation in *Binder,* 133 P.3d at 279, that "[w]hile future international developments might require us to reconsider the *Pahlavi* rule in similar extreme conditions, it will not serve the purposes of justice in this rather more ordinary situation." We decline to apply *Pahlavi* to the situation in this case.

[¶ 12] The defendants argue the plaintiffs' failure to meet the statute of limitations periods in more appropriate forums before or after suing in North Dakota should not make the more appropriate forums "inadequate," because the plaintiffs allowed the limitation periods to expire in the more appropriate forums. As we have noted, the defendants' position is contrary to the overwhelming majority rule. Moreover, as the court said in *Johnson v. G.D. Searle & Co.,* 314 Md. 521, 552 A.2d 29, 37 (1989), "it strikes us as anomalous, if not disingenuous, to request dismissal of an action on the ground that it should be heard in another forum when the action will likely never be heard in the other forum because it is barred by limitations there." *See also Delfosse,* 267 Cal.Rptr. at 228.

[¶ 13] We conclude that the availability of an adequate alternative forum is a prerequisite to granting a motion to dismiss based on *forum non conveniens* and that an adequate alternative forum does not exist if the statute of limitations has expired in the proposed alternative forum. The parties do not dispute for purposes of this appeal that the statutes of limitations had expired in other forums by the time the defendants filed their motion to dismiss. *See In re Air Crash Disaster Near New Orleans, La,* 821 F.2d 1147, 1166 (5th Cir.1987), *reversed on other grounds, Pan American World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989) (court should review *forum non conveniens* motion in light of status of case at time motion is filed); *Delgado v. Shell Oil Co.,* 890 F.Supp. 1324, 1366 (S.D.Tex.1995), *aff'd,* 231 F.3d 165 (5th Cir.2000) (same). Because there are no adequate alternative forums, we conclude the district court abused its discretion in granting the motion. Our conclusion that the district court

erred in granting the motion to dismiss based on *forum non conveniens* does not necessarily mean North Dakota's applicable statute of limitations will govern in this case. *See* Uniform Conflict of Laws–Limitations Act, N.D.C.C. ch. 28–01.2.

### III

[¶ 14]   In view of our disposition of this case, it is unnecessary to address the other issues raised.   We reverse the judgment and remand for further proceedings.

[¶ 15] GERALD W. VANDE WALLE, C.J., and WILLIAM F. HODNY, S.J.,

RONALD E. GOODMAN, S.J., KIRK SMITH, S.J., and DALE V. SANDSTROM, J., concur.

[¶ 16] The Honorable WILLIAM F. HODNY, S.J., the Honorable RONALD E. GOODMAN, S.J., and the Honorable KIRK SMITH, S.J., sitting in place of MARING, J., CROTHERS, J., and KAPSNER, J., disqualified.